## IN THE UNITED STATES BANKRUPTCY COURT
### For the Northern District of Ohio
### Eastern Division

| | |
|---|---|
| In the Matter of: | )Chapter 7 Case No 04-23498 |
| | ) |
| | ) |
| David Caravona | ) |
| | )Judge Pat E Morgenstern-Clarren |
| | ) |
| | ) |
| Debtor | ) |

### Debtor's Brief in Support of Motion to Reopen Chapter 7 Proceeding

STATEMENT OF THE CASE

  Mr. Caravona, the debtor, filed a motion on November 7, 2005, to reopen his bankruptcy case pursuant to section 350(b) of the Bankruptcy Code. Mr. Caravona filed this motion, promptly, within a very short time after the conduct complained of by the creditor. The case was closed on 1/20/05. Long after the discharge, in September, 2005, the creditor Sunset Casino, acting through the Las Vegas prosecutor, continued action to collect on a prepetition obligation of the debtor. This motion to reopen the case to request sanctions and damages was filed in November 2005.

  As a basis for this motion to reopen his case, Mr. Caravona alleges that the Nevada prosecutor and the Sunset Casino willfully violated the automatic stay and the discharge injunction. The Nevada prosecutor used the threat of criminal prosecution and incarceration to collect on a pre-petition debt. The prosecutor also acted improperly in disregarding Mr. Caravona's guaranteed Constitutional rights in a criminal prosecution to effect collection of the debt. As a result, Mr. Caravona was arrested and, in essence, forced to 'pay for his liberty' by paying the Nevada prosecutor for a pre-petition debt that was first was subject to the automatic stay, and then discharged. Once the bankruptcy

petition was filed, the prosecutor chose to ignore federal bankruptcy law and relied on Nevada state law by filing a criminal Complaint against Mr. Caravona. Mr. Caravona alleges that this action was taken to collect on the pre-petition tax obligation to the casino. These actions by the prosecutor and are in contempt of the automatic stay and the discharge injunction

Mr. Caravona also alleges that the Sunset Casino accepted money collected by the Nevada prosecutor, as satisfaction of a prepetition debt in violation of the automatic stay and section 362(h) of the Bankruptcy Code. More importantly, the casino by its inaction, where it had a duty to act, violated the stay. As will be demonstrated in a trial of this action, since the prosecutor was essentially the collection vehicle for the casino, much as the municipal court is the collection vehicle to enforce judgments in Ohio, the casino, by failing to withdraw its collection request upon receiving notice of Mr. Caravona's bankruptcy, willfully permitted collection action to continue on its behalf in violation of the automatic stay, and, subsequently, in violation of the discharge injunction.

Further, the Nevada prosecutor chose to blatantly circumvent the automatic stay by clothing a collection action as a criminal prosecution in violation of the automatic stay The Casino continued the action to collect on the debt and accepted satisfaction of the prepetition obligation with knowledge of the automatic stay. The actions of both the Nevada prosecutor's office and the Sunset Casino are in direct contempt of the automatic stay and discharge injunction, thus providing a basis for re-opening the bankruptcy case in order to pursue appropriate sanctions and damages.


FACTS

The facts of this case are as follows. Mr. Caravona incurred a debt owed to the Sunset Station Casino as a result of presentation of bad checks. Mr. Caravona acknowledged his debt to the casino and from September 1, 2004 to November 2, 2004, he attempted to begin making payments on the obligation. During this time period, he received correspondence from the State of Nevada prosecutor's office indicating that payment of the debt to the casino was required. Mr. Caravona's financial situation worsened and on October 21, 2004, a petition was filed in Bankruptcy Court on Mr. Caravona's behalf. The casino and the Nevada prosecutor were notified that the petition was filed. In fact, Mr. Caravona's attorney informed the Nevada prosecutor, via correspondence dated November 2, 2004, that he represented Mr. Caravona and that a Chapter 7 bankruptcy petition had been filed. In direct response to the notice of the bankruptcy filing, the prosecuting attorney notified counsel for the debtor that he did not plan to pursue collection through diversion, and planned to file a criminal complaint. In that same correspondence, the prosecutor requested that Mr. Caravona make arrangements to pay the debt. A criminal complaint for five (5) felony counts of Passing Bad Checks was indeed filed by the Clark County District Attorney on November 23, 2004. In correspondence from the Nevada prosecutor, dated December 3, 2004, the prosecutor informed counsel for the debtor that the criminal complaint had been filed and a warrant issued. The prosecutor, with knowledge of the bankruptcy petition, again recommended that payment be made, implying that prosecution could be avoided if the debt were paid made. On 9/19/05, Mr. Caravona was arrested in Parma, Ohio, on the outstanding warrant from Nevada. The prosecutor in Nevada was notified through the Parma police of the arrest and the Nevada prosecutor indicated that extradition was

planned.  The Nevada prosecutor entered into discussions with Mr. Caravona, who without the benefit of counsel, incurred further debt by borrowing money to post a "bond" which the prosecutor indicated would permit Mr. Caravona to avoid extradition to Nevada.  The "bond" money was then turned over to the Sunset Casino.  The Casino, which had knowledge of Mr. Caravona's bankruptcy petition, accepted the money as satisfaction of Mr. Caravona's debt.  The criminal case against Mr. Caravona was then dismissed.  It is impossible to imagine a set of facts which more dramatically demonstrates a prosecution with a debt collection purpose.  If the prosecution were for the purpose of vindicating some larger state purpose, why did the complaint disappear as soon as the casino's debt was satisfied.  The complaint disappeared as soon as the debt to the casino was satisfied because collection of the debt was the only purpose for the prosecution.

JURISDICTION

The Bankruptcy Court has jurisdiction in this matter pursuant to 28 U.S.C. Sec 1334.  The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code.  U.S.C. sec. 105(a).

VIOLATION OF CONSTITUTIONAL RIGHTS

Mr. Caravona was not in a financial situation to make restitution to the casino. For this reason, felony criminal charges were filed by the Nevada prosecutor.  The U.S. Constitution guarantees persons charged with criminal offenses certain constitutional

rights, including the right to counsel. He therefore had a constitutional right to counsel, and in fact, was represented by counsel. The Nevada prosecutor was well aware that Caravona was represented by counsel, and in fact had actually corresponded with counsel regarding this matter. There has been no evidence presented by the prosecutor that Caravona was advised to contact his attorney, nor that the prosecutor contacted his attorney. There is no evidence that Mr. Caravona intelligently and knowingly waived this right. Instead, the prosecutor conveniently bypassed counsel, and dealt directly with Mr. Caravona. In addition, the prosecutor accepted money posted as "bail" by the defendant as 'restitution' for a prepetition debt. Had counsel been consulted, a Writ of Habeas Corpus could have been filed on Caravona's behalf to restrain his extradition and provide the bankruptcy court the opportunity to determine whether an injunction was required. Not only did the prosecutor bypass defendant's counsel, he also bypassed the court. Once a criminal charge is filed, the court, not the prosecutor, rules on any actions, motions or dismissals regarding the case. The state becomes a party in the criminal action. Here, the prosecutor acted as prosecutor and judge. The prosecutor filed a complaint. Case number 04FH2890X was opened in the Nevada courts. A judge was assigned to the case. There is no evidence that the judge approved the prosecutor's actions on 9/19/05. The first action noted by the court was on 10/31/05 when it dismissed the action, presumably upon the prosecutor's recommendation, and after the Casino had received restitution. The debt collection purpose of the entire "prosecution" could not be more clear.

<u>RE-OPENING THE DEBTOR'S BANKRUPTCY CASE IS NECESSARY TO CARRY OUT THE PROVISIONS OF THE BANKRUPTCY CODE AND TO GIVE EFFECT TO THE DEBTOR'S DISCHARGE</u>

When Mr. Caravona filed his petition in bankruptcy court on October 21, 2004, and the court ordered relief, the automatic stay provided by 11 U.S.C. Section 362(a)(1) came into immediate effect. 11 U.S.C. Section 362(a)(1) provides, in pertinent part:

Except as provided in subsection (b) of this section, a petition filed under Section 301, 302 or 303 of this title…operates as a stay, if applicable to all entities of…

the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title…

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title…

Therefore, the automatic stay commenced with the filing of Mr. Caravona's petition not only with respect to the commencement of process, but also the continuation of process to recover a claim against the debtor where the claim arose before the commencement of the case..

IF A CRIMINAL PROCEEDING IS MERELY AN ATTEMPT AT DEBT COLLECTION, THE 11 U.S.C. SEC. 362(B)(1) EXCEPTION TO THE AUTOMATIC STAY PROVISION DOES NOT APPLY

Mr. Caravona respectfully asserts that the criminal action filed in Nevada was an attempt to collect a debt. The automatic stay policy does apply in this instance. The prosecutor and the casino were subject to the automatic stay. The courts have held that the exception to the automatic stay set forth in 362(b)(1) is inapplicable where the criminal proceeding is initiated for the purpose of collecting a debt. In re Muncie, 240 B.R. 725,727 (Bankr. S.D. Ohio 1999).

The Nevada prosecutor contends that the automatic stay does not apply to the

commencement or continuation of a criminal proceeding. 11 U.S.C. sec. 362(b)(1). The prosecutor contends that in order to circumvent the general provision against enjoining state criminal proceedings, the debtor must show bad faith on the part of the prosecutor, not just the creditor, in order to enjoin the state criminal proceeding. Caravona asserts that the principal motivation behind this criminal proceeding is to collect a debt which was be discharged.

It has been held that the exception to automatic stay set forth in 11 U.S.C. Sec. 362 (b)(1) did not apply when the creditor initiated a criminal proceeding for the purpose of collecting a debt that was discharged in the debtor's chapter 7 case. The fact that the grand jury indicted, did not absolve the creditor's motivation for bringing the complaint, especially where the prosecutor did not conduct his own investigation to insure that the allegations made by the creditor were accurate. The bankruptcy court had already exercised jurisdiction over the debtor at the time the state criminal proceeding was commenced. Neither the investigation leading up to the prosecution nor the prosecution itself would have been commenced <u>but for the actions of the creditor</u>. The court held that an injunction was necessary to give effect to the debtor's discharge. <u>In re Dovell</u>, 311 B. R. 492, 2004

The prosecutor cites <u>Younger</u> regarding the state's interest in administering their criminal justice system free from federal interference. <u>Younger v. Harris</u>, 401 U.S. 37, 44-45 (1971). However, <u>Younger</u> does not apply to this situation. The court in <u>Dovell</u> stated that <u>Younger</u> was inapplicable as the Bankruptcy Court "had already exercised jurisdiction over the plaintiff at the time the state criminal proceeding was commenced." The Sixth Circuit has expressed in dicta that an injunction might be appropriate where the

state criminal action seeks restitution for a discharged debt. <u>Daulton v. Caldwell</u> (In re Daulton), 966 F.2d 1025, 1028 (6th Cir. 1992). The court indicated that the injunction would be necessary to "protect the integrity of the bankruptcy court and laws, as well as to prevent irreparable harm to the debtor, when the facts reveal that the criminal action was initiated for the purpose of collecting a debt which either was or could be discharged in bankruptcy proceedings." <u>Howard v. Allard</u>, 122 B.R. 696, 699 (W.D. Ky. 1991). Therefore if a criminal proceeding is merely an attempt at debt collection, the 11 U.S.C. sec. 362(b)(1) exception to the automatic stay provision does not apply.

As noted above, 11 U.S.C.S. Sec. 362 provides for an automatic stay of creditor's attempts to collect pre-petition debt from debtors who file a bankruptcy petition. An automatic stay is effective immediately and automatically when the bankruptcy petition is filed. The automatic stay is broad in scope to promote orderly and fair distribution among creditors and to provide the debtor a breathing spell from his creditors. As claims stayed are broad, so to are the entities stayed. According to 11 U.S.C. Sec. 101(15), government units, except in some situations, are among the many entities obligated to comply with the stay. Private citizens can petition a federal court to enjoin state officials in official capacities from engaging in ongoing conduct that violates the Constitution or a federal statute. <u>Antrican v. Odom</u>, 290 F.3d 178, 184-86 (4th Cir. 2002). In the case at bar, the casino's claim arose before Caravona"s bankruptcy petition was filed. The prosecutor and the casino had notice of the petition. The casino falls within the sec. 101(15) definition of an entity and its claim is of the type automatically stayed. The casino, therefore, would be required to honor the automatic stay by taking its place in the line of creditors. The casino could also petition the bankruptcy court for relief from the stay

pursuant to 362(b) or by objecting to dischargeability under 523 before pursuing criminal collection.

A true criminal prosecution has protection of society as its goal. The use of the criminal process to collect debts may frustrate the purpose of the automatic stay and the purpose of criminal prosecutions. The bankruptcy court should have the opportunity to determine whether a prosecution is for purposes of vindicating the public's need for criminal prosecution of certain conduct with respect to checks, or whether it is rather a debt collection for individual private citizens. Debtors should be protected from debt collection actions. The use of state criminal prosecution to collect debts frustrates both state and federal purposes.

## CONFLICT BETWEEN FEDERAL AND STATE LAW; FEDERAL PREEMPTION; YOUNGER INAPPLICABLE

Instead of seeking recourse in the bankruptcy court, the casino and the prosecutor relied on Nevada state law and filed a felony criminal complaint. This creates a conflict between the federal standard and the state position. Under the federal standard, the court accepts the rule that all true criminal prosecutions are excepted from the automatic stay, but also looks to determine whether the action is a shallow attempt to collect a debt. The state of Nevada takes the unilateral approach that all criminal prosecutions are exception to the automatic stay. The court stated that when federal and state discord must be harmonized in situations like this, the analytical tool is federal preemption under the authority of the Supremacy Clause, Article VI of the Constitution. Federal legislation can nullify conflicting state or local actions. Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1 6 L.

Ed. 23.  State law is preempted by operation of law to the extent that it actually conflicts with federal law.  The court must consider whether the state law stands as an obstacle to the accomplishment of the full purposes and objectives of federal law.  Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 248 (1984). Even though the federal standard gives deference to true state criminal prosecution, it nevertheless demands preservation of the overall automatic stay safe harbor from even well-disguised collection actions.  Nevada's position of pursuing criminal charges in such matters poses an obstacle to accomplishing the full purpose of the Bankruptcy Code.  The purposes of the automatic stay would be frustrated if prosecutions covered what are, in reality, debt collection actions.  Nevada's actions amounted to debt collection and all debt collection actions are subject to the automatic stay.  Federal preemption should resolve any inconsistency in the federal government's favor.  Here, Nevada's criminal prosecution was transparent.   There is no question that it was a debt collection action.  There is no way that the bankruptcy court can assure fair distribution of assets or organize the debtor's bankruptcy process when certain special interest creditors receive an unfair advantage through state assistance.  The Nevada process violates the Supremacy Clause, making Younger inapplicable.  Nevada avoided participating in the Bankruptcy action to pursue criminal prosecution in a transparent attempt to collect a debt on behalf of the casino, thereby flying in the face of the bankruptcy court's authority to protect debtors.

 In the instant case, the essence of the prosecutor's actions is without a doubt, collection on the casino's claim.  Collection was the sole purpose of the action as evidenced by dismissal of the criminal action immediately upon receipt of the funds.  The evidence will show that Mr. Caravona's name did not even appear "in the computer" and

that no criminal record remained once the funds were turned over to the casino. The Prosecutor's charges impact Caravona in exactly the same manner that a direct action by th Casino would, and it manipulates the purpose of 362(b) to allow the Casino to avoid the automatic stay by, effectively, retaining the prosecutor to collect its debt. The prosecutor's office was a collection agency and a "heavy" for the casino. The prosecutor in effect said "unless you pay the casino, we will extradite you to Nevada and pursue charges and expose you to potential jail time." Until he paid in full, this threat was over Caravona's head. The prosecutor clearly acted for the special interest of the Casino.

Here, since the criminal action has been dismissed, the bankruptcy court, in the interests of justice, should re-open Mr. Caravona's case. The court should then hold the Nevada prosecutor's office and the casino accountable for their actions by finding both in contempt of court. Mr. Caravona should be awarded damages and punitive damages.


CASINO FAILED TO DISCONTINUE COLLECTION ACTIVITIES AND WILLFULLY VIOLATED THE AUTOMATIC STAY

Section 362(h) of the Bankruptcy Code states that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. Section 362(h); In re Robinson, 228 B.R. 75, 80 (Bankr.E.D.N.Y. 1998) An additional finding of a maliciousness or bad faith on the part of the offending creditor is not necessary to support an award of actual damages but would warrant the further imposition of punitive damages pursuant to section 362(h). The party seeking damages for violation of the automatic stay must show that the bankruptcy petition was

filed, that the debtor is an individual, that the creditor received notice of the petition, that the creditor's actions were in willful violation of the stay, and that the debtor suffered damages. The party must show this evidence by a preponderance of the evidence.  <u>In re Robinson</u>, Id.

Mr. Caravona is an individual who filed a bankruptcy petition.  The casino had actual notice of the petition as did the Nevada prosecutor's office as evidenced by correspondence between the prosecutor and debtor's counsel.  The receipt of notice from the Clerk of Courts is sufficient for a creditor to be deemed to have knowledge of the bankruptcy proceeding.  <u>In re Robinson</u>, at 84.   Here, the Casino's actions or lack of action amounted to a willful violation of the automatic stay.  A failure to act by a creditor where the creditor had knowledge of the bankruptcy filing, may be a violation of the a automatic stay.  <u>In re Wright</u>, 328 B.R. 660 (Bankr. E.D.N.Y. 2005) Courts have held that Section 362(h) should be liberally construed to ensure that debtors receive the protection of the automatic stay. <u>In re Robinson</u>, at 81.  If Section 362(h) were limited to violators who had an actual intent to violate the stay, "the deterrent effect of the damages remedy, and the relief it affords wronged debtors, would be compromised inappropriately."  Id.  The casino had a duty to stop collection efforts once it had knowledge of the stay.  It is well settled that a creditor has an <u>affirmative duty</u> under Section 362 to take the necessary steps to discontinue its collection activities against a debtor.  <u>In re Sucre</u>, 226 B.R. 340, 347 (Bankr.S.D.N.Y.1998) "The provisions of the automatic stay place the responsibility to discontinue any pending collection proceedings squarely on the shoulders of the creditor who initiated the action."  Id., citing <u>In the</u>

Matter of Sams, 106 B.R. 485, 490 (Bankr.S.D.Ohio1989)  Based on the language of Section 362(a) many courts have emphasized the obligation incumbent upon creditors to take necessary steps to halt or reverse pending state court actions or other collection efforts commenced prior to the filing of the bankruptcy petition.  By failing to coordinate with the prosecutor's office or otherwise take the necessary steps to ensure that the collection efforts against Mr. Caravona were stopped, the casino willfully violated the stay.

Finally, Mr. Caravona suffered monetary damage as a result of being detained and compelled to post a "bond", in the amount owed to the casino.   Mr. Caravona was forced to accrue additional debt in order to obtain the funds to secure his release from confinement.  This clearly defeats the purpose of a bankruptcy, which is to provide a debtor with relief from creditors.  In re Miller, 22 B.R. 479, 481 (D.Md.1982)  Mr. Caravona was subjected to financial pressures that the automatic stay was designed to temporarily abate.  The borrowed "bond" money was then turned over to the Casino by the prosecutor as satisfaction of the debt.  The Casino accepted this money with full knowledge of the bankruptcy petition in blatant violation of the automatic stay and discharge injunction.   The criminal charges against Mr. Caravona were ironically dismissed with the posting of his "bond", further demonstrating that the purpose of the criminal prosecution was not to punish criminal behavior, but to effectuate collection of a debt.

Mr. Caravona should be entitled to actual damages under Section 362(h) which was intended to compensate a debtor for damages sustained as a result a willful violation of the automatic stay.  Sucre, citing In re Cox, 214 B.R. 635, 642 (Bankr.N.D.Ala.1997)

CASINO VIOLATED SECTION 362(a) BY FAILING TO RETURN POST PETITION
MONEY

Sunset Station Casino violated Section 362(a) by failing to promptly return to Mr.
Caravona the money received as satisfaction of the prepetition debt after receiving actual
notice of the bankruptcy case.  The Court in In re Sucre, 226 B.R. 340
(Bankr.S.D.N.Y.1998) held that a leasing company willfully violated Section 362(a) of
the Bankruptcy Code by failing to discontinue its garnishment action after receiving
actual notice of the bankruptcy filing.  The Court held that by not making a diligent effort
to return the debtor to her status quo position as of the petition date, the company violated
Section 362(a).  The Court in citing In re Sams, 106 B.R. 485, 490 (Bankr.S.D.Ohio1989)
held that upon receiving actual notice of the commencement of a bankruptcy case, a
creditor has an **affirmative duty under Section 362 to take the necessary steps to
discontinue its collection activities
against the debtor**.  "The provisions of the automatic stay place the responsibility to
discontinue any pending collection proceedings squarely on the shoulders of the creditor
who initiated the action".  The Court cited several cases which, based on a plain reading
of 362(a), emphasized the obligation incumbent upon creditors to take necessary steps to
halt or reverse pending state court actions or other collection efforts commenced prior to
the filing of the bankruptcy petition.  In re Dungey, 99 B.R. 814 (Bankr.S.D.Ohio 1989);

In re Mitchell, 66 B.R. 73 (Bankr. S.D.Ohio 1986); In re Elder, 12 B.R. 491
(Bankr.M.D.Ga.1981)
The Court in Sucre, held that upon learning of a bankruptcy filing, a creditor has an

**affirmative duty to return the debtor to the status quo position as of the time of the filing of the petition**. In re Sucre, 226 B.R. 340, 348 (Bankr.S.D.N.Y.1998); also In re Dungey, 99 B.R. at 816-17. The "creditor should undo its postpetition collection activities without the debtor having to seek affirmative relief from the bankruptcy court". In re Stephen W. Gross, P.C., 68 B.R. 847, 850 (Bankr.E.D.Pa.1987) "Refusal to return the property upon learning of the [bankruptcy] proceeding is a willful violation of the stay provisions and may be contemptible." Matter of Endres, 12 B.R. 404, 406 (Bankr. E.D.Wis.1981) Here, despite having notice of the bankruptcy filing, Sunset Station Casino accepted payment of the prepetition debt. The Casino could have returned Mr. Caravona to his status quo position by returning the improperly obtained funds. The failure of the Casino to return the funds is a violation of 362(a), and Mr. Caravona incurred damages as a result for which he is entitled to damages pursuant to 362(h).


BANKRUPTCY CASE SHOULD BE REOPENED TO REVIEW VIOLATIONS OF THE AUTOMATIC STAY

The Nevada prosecutor acted in concert with the Sunset Casino to effect collection of a prepetition debt in violation of the automatic stay. A criminal case was filed against Mr. Caravona by the Nevada prosecutor. In all correspondence from the prosecutor to Mr. Caravona and his attorney, the prosecutor advised that restitution be made to avoid arrest and further prosecution. Implicit in this correspondence is the position that the debtor's criminal charges for Passing Bad Checks were secondary to obtaining repayment for the Casino. The prosecutor's actions convey the impression he was acting as an "enforcer" and/or a "collection agent" for the Casino. This position as a "heavy" is further

evidenced by the prosecutor's action in obtaining repayment from Mr. Caravona in the form of a "bond" which was used not to guarantee a court appearance, but to repay the Casino for the prepetition debt. Once Mr. Caravona met the demand for repayment of the prepetition debt, the prosecutor dismissed the criminal charges further demonstrating that the <u>sole purpose</u> in filing the criminal charges was to effect collection of a prepetition debt. While restitution in criminal actions is seemingly an exception to the automatic stay, here, the money collected was not the result of a restitution order by the judge assigned in Mr. Caravona's criminal case. No plea was entered and there was no finding of guilt.

Thus, <u>there was no criminal sentence and no official restitution order</u>. As such, the exception to the automatic stay afforded to criminal restitution in inapplicable. The Sunset Casino was aware of the bankruptcy filing, but failed to stop collection efforts. Instead, the Casino continued its pursuit of collection through the thinly veiled collection proceeding through the Nevada prosecutor's office. The Casino also failed to return the money it received as payment for the prepetition debt. Based on the above argument and cases, Mr. Caravona asserts that the Casino, through its actions and inactions, violated the automatic stay.

Based on the wrongful actions of the prosecutor and the Casino to obtain collection of a prepetition debt, Mr. Caravona should be afforded the opportunity to present his evidence regarding the violation of the automatic stay to the Bankruptcy Court for further action.

<u>Timing</u>

Therefore, Mr. Caravona respectfully requests that his bankruptcy case be reopened for further action according to law and for determination of damages.

Respectfully submitted,

/s/Robert J. Berk (0001031)
Robert J. Berk, Co., LPA
Suite 1425
75 Public Square Building
Cleveland, OH 44113
216-241-3880
216-241-5366 fax
Attorney for Debtor

**Electronic Mail Notice List**
**The Chapter 7 Trustee and US Trustee are served by ecf**

In addition, the following is the list of attorneys who are currently on the list to receive e-mail notices for this case.

- **Robert J Berk**
  bobberklex@aol.com berklaw@sbcglobal.net;hows1425@aol.com;pding50@aol.com

## Manual Notice List

**The following were served by regular US Mail this _____2nd___ day**

of March, 2006.

Clark County District Attorney's Office; 200 South Third Street, 5th Floor; Las Vegas; NV 89101

James I Miller, Esq.; Deputy District Attorney; Clark County District Attorney's Office; 200 South Third Street, 5th Floor; Las Vegas, NV; 89101

David Roger, Esq; District Attorney; Clark County District Attorney's Office; 200 South Third Streed, 5th Floor; Las Vegas, NV; 89101

Sunset Station Hotel-Casino; 1301 W. Sunset Road; Henderson NV 89014-6607

Timothy B. McGranor, Esq.; Bailey Cavalieri, LLC; 10 West Broad St.; Suite 2100; Columbus, OH 43215

/s/Robert J. Berk

Robert J. Berk; Attorney for Debtor

WAS PROOF OF CLAIM SENT TO BANKRUPTCY COURT?  BERK SENT NOTICE TO THE

PROSECUTOR THAT CARAVONA WAS FILING.  <u>DID HE ALSO SEND NOTICE TO THE CASINO?</u>


<u>WHEN WAS THE ESTATE DISCHARGED?</u>


<u>WAS THE CASINO'S CLAIM LISTED IN THE ESTATE?</u>


<u>WAS THE CASINO'S CLAIM DISCHARGED?</u>


<u>WAS CRIMINAL CASE FILED AFTER DISCHARGE?</u>

Nevada has the bad check diversion unit, but does not use it for those who have obtained a stay of execution thru bankruptcy. Caravona did not take part in this diversion.

McMullen case: The court stated that a discharge injunction is directed at private debt-collection activities. Bankr.Code 11 U.S.C.A. sec 524 (a)(2). In McMullen, contractor retained money meant for a sub-contractor. The prosecutor was informed in an effort to get the contractor to pay the sub-contractor. Payment was made, and the plea was to a misdemeanor. In that case, the prosecutor indicated that had he known the extent of the contractor's actions, he would have prosecuted regardless of the restitution. The court in McMullen also stated that criminal prosecution would violate discharge injunction statute if the alleged crime is in substance, 'merely failure to pay debt' in question. Bankr.Code 11 U.S.C.A. sec 524 (a) (2)

Prosecutor must allege more than just debt. Here, did, fraud. Therefore no conflict with bc.


Bad faith argument:

Two ways. 1 -"Prosecuting attorney has reason to doubt the validity of the charges". 2- There is a cozy relationship between the prosecutor and the victim. I.e. case filed as a favor. Even if prosecutor's motive is for a conviction and not in bad faith, can victim's motive for collection of the debt, not punishment or rehab, be imputed to the prosecutor? [Constructive bad faith.McMullen 411 Prosecutor should represent the interests of the public at large, not act as an agent for the creditor. There is a presumption that public officials conduct themselves in good faith. McMullen 406-407 The fact that complaining parties may have other motives does not alter the state's interest in prosecuting alleged criminal offenders.Wagner B.R. at 340.


Daulton: pro Berk position. Criminal proceedings could continue bu prohibited defendants from seeking restitution


Kelly:

 Court in Hollis held costs were not dischargable in light of Kelly because it was 'part of [the debtor's]

criminal sentence'.  Hollis 108.  Hollis extended Kelly to state Kelly effectively deleted from 523 the

language excepting fines which are "compensation for actual loss".   Hollis

 "sec 523 (a)(7) preserves from discharge any condition a state criminal court imposes as part of a criminal

sentence." Hollis quoting Kelly, 479 U.S. at 50  So can discharge as a civil obligation, but discharge does

not bar <u>prosecutor</u> from instituting proceedings with objective to get restitution.

<u>Failure to state a claim argument</u>:  prosecutor says charges are already dismissed.  Should be.  However,

there was a transparent vio of automatic stay by the creditor w/ state as agent

Discussion – 362 and 105 injunctive relief

Debt collection – sheep, paperwork, case dropped with restitution, transparent

Statement:

Prosecutor claims that the debtor has failed to state a valid legal basis for reopening his bankruptcy case.

Statement:  The use of criminal prosecution to collect debts frustrates federal purpose.

**<u>THOUGHT PROCESS</u>**

Debt ----------petition-------stay-----------criminal prosecution----------prosecutor exempt under 362---------

If really debt, exemption doesn't apply---------conflict betweenstate and federal laws--------------Supremacy

Clause ---------remedy is injunction------------here, too late for injunction as case already dismissed------------

remedy is contempt

**Contempt**

-Prosecutor not exempt from stay as was debt collection

-Had notice of petition

-defied bankruptcy law

-violation of stay


Regarding argument that there is **no legal basis** for claim:  Contempt of court; Violation of debtor's

bankruptcy rights; Violation of debtor Constitutional right to counsel