UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 04-23498-pmc |
| | ) | |
| David R. Caravona, | ) | Judge Pat E. Morgenstern-Clarren |
| | ) | |
| Debtor. | ) | Chapter 7 |

**STATION CASINOS' MEMORANDUM IN OPPOSITION TO DEBTOR'S BRIEF IN SUPPORT OF MOTION TO REOPEN CHAPTER 7 PROCEEDING**

Station Casinos, Inc. ("Station Casinos"), incorrectly identified by David R. Caravona (the "Debtor") as "Sunset Casino," by and through counsel, submits this Memorandum in Opposition to the Debtor's Brief in Support of Motion to Reopen Chapter 7 Proceeding (dkt. 23) (the "Supplemental Brief"), filed on March 2, 2006. As is more fully set forth below, the Debtor has failed to establish any cause sufficient to reopen his bankruptcy case as required by Section 350(b) of the Bankruptcy Code.

**I.    INTRODUCTION AND PROCEDURAL BACKGROUND**

1.    At the hearing held on February 16, 2006, this Court instructed Debtor's counsel to file a supplemental brief to address his citation during oral argument to the overruled case of *In re Simonini*, 282 B.R. 604 (W.D.N.C. 2002), *vacated*, 69 Fed. Appx. 169 (4th Cir. 2003).[1] The Debtor did not comply with this instruction. Instead, the Debtor filed the Debtor's Brief in Support of Motion to Reopen Chapter 7 Proceeding (dkt. 23) (the "Supplemental Brief"), which restates the same arguments made by the Debtor in his initial filing. The Debtor's Supplemental Brief fails to cite *Simonini*, but continues to rely on the same arguments that the Fourth Circuit rejected.

---

[1] The Fourth Circuit's opinion is attached as Exhibit A.

2. Debtor argues that either the filing of a criminal complaint two months before the Debtor filed his bankruptcy petition or the Debtor's subsequent arrest eight months after the bankruptcy case was closed violated the automatic stay. However, the automatic stay was not in effect at the time of either of these crucial events, therefore, the Debtor's argument fails.

3. Furthermore, the continuation of the prepetition criminal restitution proceedings by the District Attorney did not violate the automatic stay or the discharge injunction. The several cases that expressly address prepetition criminal complaints under the Nevada statutes at issue in this case reject Debtor's arguments that a prepetition referral to the Nevada district attorney violates the automatic stay. *See Simonini*, 69 Fed. Appx. 169; *In re Byrd*, 256 B.R. 246 (Bankr. E.D.N.C. 2000); *Sewell v. Clark County District Attorneys Office/Bad Check Diversion Unit of Clark County, State of Nevada (In re Sewell)*, No. 04-23078-WV, AP No. 05-1049-WV (Bankr. W.D. Okla. Feb. 8, 2006) (attached as Exhibit B).

4. Finally, the Debtor was notified of the arrest warrant during the pendency of his bankruptcy case and took no action. Having slept on his right while the case was open, laches prevents reopening the case at this time. For these reasons, the Motion by Debtor David Caravona to Reopen Case (dkt. 11) (the "Motion to Reopen") should be denied.

## II. FACTUAL BACKGROUND

5. In November 2003, the Debtor presented Station Casinos with checks for $15,000.00 that were returned for insufficient funds. Nevada Revised Statutes § 205.130(1)(e) provides that passing bad checks to obtain credit in a casino is a Class D felony, punishable by one to four years in prison. Nev. Rev. Stat. §§ 193.130, 205.130(1)(e).[2] The defendant is also <u>required</u> to make restitution for the amount of the bad checks. *Id.* § 205.130(1)(e).

---

[2] Copies of the relevant Nevada Statutes are attached as Exhibit C.

6. Nevada law permits the District Attorney's office to institute a restitution program for certain persons accused of violating Nev. Rev. Stat. § 205.130. *See* Nev. Rev. Stat. §§ 205.466 to .472.

7. Debtor failed to repay the amounts of the bad checks. Accordingly, Station Casinos filed five Bad Check/Marker Criminal Complaint Forms ("Criminal Complaints") with the Clark County District Attorney ("DA") on August 23, 2004.[3]

8. Pursuant to Nev. Rev. Stat. §§ 205.466 to .472, Debtor was placed in the DA's restitution program. Pursuant to Nev. Rev. Stat. §§ 205.466 to .472, it is the DA, <u>not</u> the victim who has the ability and authority to determine the actions to be taken against the defendant. (*See* Objection and Memorandum in Support of Objection by the Clark County District Attorney's Office to Debtor's Motion to Reopen Bankruptcy Case [dkt. 18] at ¶ 20.) ("Station Casinos has no control whatsoever over the criminal proceedings initiated by the State of Nevada.").

9. Since the filing of the Criminal Complaints, Station Casinos has had no contact with Debtor, has made no effort to collect from the Debtor, and has taken no other action against the Debtor.

10. Two months after the filing of the Criminal Complaints, on October 21, 2004, the Debtor filed his bankruptcy petition.

11. Following the commencement of the bankruptcy case, Debtor's counsel notified the DA that the Debtor had filed bankruptcy. (*See* Letter from Robert Berk to DA, dated November 2, 2004, attached as Exhibit E.) In response, the DA's office indicated to the Debtor's counsel that it would continue with criminal proceedings. (*See* Letter from DA to Robert Berk, dated November 2, 2004, attached as Exhibit F.) On December 2, 2004, the DA's office

---

[3] Copies of the Criminal Complaints are attached as Exhibit D.

informed Debtor's counsel that an arrest warrant had been issued. (*See* Letter from DA to Robert Berk, dated December 3, 2004, attached as Exhibit G.)

12. Despite the clear warnings that the Debtor was subject to arrest, the Debtor made no effort to obtain a ruling from this Court concerning the automatic stay, nor did he seek to determine whether payments in connection with the DA's restitution program would be dischargeable.

13. On January 20, 2005, the Debtor received his discharge and the bankruptcy case was closed.

14. Eight months later, in August 2005, the Debtor was arrested pursuant to the arrest warrant issued in December 2004. Pursuant to the warrant, the Debtor was required to post a $15,000.00 bond, which he agreed to turn over to the DA's office in order to avoid extradition to Nevada for prosecution.

15. The Debtor now wishes to avoid his deal with the DA's office, to recover the $15,000.00 he agreed to pay in restitution, and to obtain an injunction against prosecution. He has moved to reopen his bankruptcy case to accomplish this.

16. The Debtor's Motion to Reopen should be denied for two reasons. First, neither the automatic stay nor the discharge injunction provides the Debtor the ability to obtain the relief he seeks. Therefore, reopening the case would be futile. Further, the Debtor's Motion to Reopen should be denied on the grounds of laches. The Debtor was notified while his case was pending that the DA's office intended to prosecute him, and he took no action to seek a determination from the Court regarding the relevant issues. Having slept on his rights, the Debtor cannot now reopen his bankruptcy case to obtain the relief he seeks.

### III. LAW AND ARGUMENT.

#### A. Neither the Automatic Stay nor the Discharge Injunction Entitles the Debtor to the Relief He Seeks.

##### 1. The Automatic Stay Was Not in Effect at the Time of the Filing of the Criminal Complaints or the Debtor's Arrest.

17. The Criminal Complaints were filed two months before the Debtor filed bankruptcy. The Debtor was arrested eight months after his case was closed. The automatic stay commences at the filing of the bankruptcy petition and terminates when the case is closed or the debtor receives his or her discharge. 11 U.S.C. § 362(a) and (c).

18. Accordingly, at the two critical points in this case—the filing of the Criminal Complaints and the Debtor's arrest—the automatic stay was not in effect. Accordingly, no violation of the automatic stay occurred from either of these two occurrences.

##### 2. The Automatic Stay Did Not Prohibit the Continuation of the Restitution Proceedings Against the Debtor.

19. Debtor further argues that the continuation of the prepetition restitution proceedings violated the automatic stay, characterizing the restitution program as the "continuation of process to recover a claim" against Debtor. As discussed below, this identical argument has been routinely and repeatedly rejected by the courts, and should similarly be rejected here.

20. In *In re Byrd*, 256 B.R. 246 (Bankr. E.D.N.C. 2000), the debtor, like Debtor here, was required to make payment to the DA pursuant to the Nevada criminal restitution statutes. The debtor argued that the payment, and the subsequent restitution made to the casinos, violated the automatic stay and discharge injunction. *Id.* at 248. The court disagreed, holding that where the criminal complaint was made before the bankruptcy filing, the DA's office does not violate the stay by continuing to prosecute and seek restitution from the debtor. *Id.* at 252.

21. The district court in *Simonini* similarly held that the automatic stay does not apply to the DA's continued efforts to the prosecute and seek restitution from a debtor. *Simonini*, 282 B.R. at 610–11. The district court, however, held that Section 105 of the Bankruptcy Code permitted it to block proceedings under the criminal restitution statutes, and issued an injunction. *Id.* at 611–14. The Fourth Circuit rejected this argument, vacating the injunction and holding that the plain language of Section 362 prohibited the court from blocking the DA's actions. *Simonini*, 69 Fed. Appx. at 171 (citing *Kelly v. Robinson*, 479 U.S. 36 (1971)). *See also Sewell*, attached as Exhibit B (holding that Section 105 does not provide grounds to block the DA's actions under the Restitution Program).

### 3. The Discharge Injunction Does Not Apply to the Restitution Payments Received by the DA's Office.

22. In *Kelly v. Robinson*, 479 U.S. 36, 47 (1986), the Supreme Court noted that the Bankruptcy Code must be interpreted in light of the:

> deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings. The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States. This Court has emphasized repeatedly "the fundamental policy against federal interference with state criminal prosecutions."

(quoting *Younger* v. *Harris*, 401 U.S. 37, 46 (1971)). In light of this deep conviction, the Supreme Court held that criminal restitution payments fell within the exception to discharge found in Section 523(a)(7) of the Bankruptcy Code, regardless of whether the payments were then forwarded to the victim. *Id.* at 50–53.

23. The Debtor argues that because the payment to the DA's office was forwarded to Station Casinos, it was really a "debt collection" action. The Supreme Court rejected this view of restitution, stating:

> Restitution is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused. Such a penalty will affect the defendant differently than a traditional fine, paid to the State as an abstract and impersonal entity, and often calculated without regard to the harm the defendant has caused. Similarly, the direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine.

*Id.* at 49 n.10.

24. Relying on this clear precedent from the Supreme Court, the court in *Byrd* rejected the debtor's argument that the DA's restitution program violated the discharge injunction, holding:

> [T]he restitution and fines [the debtor] paid were, pursuant to the Nevada statute, within the "fine, penalty, or forfeiture" language of § 523(a)(7). It is clear that a restitution award can be payable "to and for the use of the governmental unit" even if the government receives the money and then disburses it to victims.

*Id.* at 255 (citing *United States Dept. of Housing v. Cost Control Marketing v. Sales Management of Va., Inc.*, 64 F.3d 920, 927–28 (4th Cir. 1995)).

### 4. The Cases Cited by the Debtor Do Not Address Prepetition Criminal Referrals.

25. The cases relied upon by the Debtor do not involved prepetition criminal referrals. *In re Muncie*, 240 B.R. 725 (Bankr. S.D. Ohio 1999) involved a <u>post</u>petition criminal referral, as did *In re Dovell*, 311 B.R. 492 (Bankr. S.D. Ohio 2004).

26. In *Dovell*, the Court expressly relied on the fact that the bankruptcy court already had jurisdiction over the debtor as the basis for its finding that *Younger v. Harris*, 401 U.S. 37 (1971) did not apply.

27. Here, in contrast, Debtor was made subject to the Nevada criminal justice system two months before this Court obtained jurisdiction over him. Thus, *Dovell* and *Muncie* are inapplicable.

28.     For these reasons, the Debtor has failed to establish that either the automatic stay or the discharge injunction provide him with the relief he will seek if this case is reopened. Accordingly, no cause exists to reopen the case under Section 350(b), and the Motion to Reopen should be denied.[4]

### B. The Motion to Reopen Should Be Denied on the Grounds of Laches.

29.     In *In re Dryja*, 320 B.R. 650 (Bankr. N.D. Ohio 2005) (Baxter, C.J.), this Court denied a motion to reopen a bankruptcy case on the grounds of laches. The debtor had been made aware of the creditor's asserted liens during the pendency of the bankruptcy case and took no action to challenge the liens while the case was open. *Id.* at 652. The Court held that the delay by the debtor and the resulting prejudice to the creditor constituted the defense of laches, and the Court denied the motion to reopen. *Id.* at 652–53.

30.     Similarly, the Debtor here was made aware of the DA's intent to continue prosecuting him, and was even informed that an arrest warrant had been issued. (*See* DA's Letters to Robert Berk, attached as Exhibits F and G.) The Debtor took no action to challenge these actions during the pendency of this bankruptcy case. It was not until eight months after the case was closed that he took any actions. Like in *Dryja*, the Debtor here is barred by laches from seeking the relief he requests. For this additional reason, the Debtor's Motion to Reopen should be denied.

## IV. CONCLUSION

31.     Neither the automatic stay nor the discharge injunction has any effect of the actions of the DA's office, or Station Casino's receipt of the restitution payment from the DA,

---

[4] The Debtor also makes the argument that he was deprived of the ability to obtain counsel. The Debtor has provided no evidence to support the fact that the Debtor was not properly given his *Miranda* warnings and the opportunity to obtain counsel. In any event, this would be a matter to be dealt with in the Debtor's criminal proceedings, not this Court.

where the Criminal Complaints against the Debtor were filed two months before his bankruptcy filing. Further, because the Debtor was aware of the DA's intent to prosecute him during his bankruptcy case and failed to take action, the Debtor is barred by laches from seeking the relief he requests. For these reasons, the Debtor's Motion to Reopen should be denied.

Date: March 13, 2006

Respectfully Submitted,

*/s/ Timothy B. McGranor*
Timothy B. McGranor (0072365)
Bailey Cavalieri LLC
10 West Broad Street, Suite 2100
Columbus, OH 43215
(614) 221-3155 / Fax: (614) 221-0479
E-Mail: Timothy.McGranor@baileycavalieri.com

*Attorneys for Station Casinos, Inc.*

## CERTIFICATE OF SERVICE

A copy of the foregoing ***Station Casinos' Memorandum in Opposition to Debtor's Brief in Support of Motion to Reopen Chapter 7 Proceeding*** was served this 13th day of March 2006, via the Court's CM/ECF system and/or by first class U.S. mail, postage prepaid, upon the following:

Robert J. Berk, Esq., *via CM/ECF*
*Counsel for the Debtor*

Waldemar J. Wojcik, Esq., *via CM/ECF*
*Trustee*

Susan M. Gray, Esq., *via CM/ECF*
*Counsel for the Debtor*

Kimberly A. Phillips, Esq., *via CM/ECF*
*Counsel for the Clark County District Attorney*

David R. Caravona
7192 Parma Park Blvd.
Parma, OH 44130
*Debtor*

*/s/ Timothy B. McGranor*
Timothy B. McGranor (0072365)