UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

Official Time Stamp
U.S. Bankruptcy Court
Northern District of Ohio
July 28, 2006
(9:42am)

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 04-23498 |
|  | ) |  |
| DAVID CARAVONA, | ) | Chapter 7 |
|  | ) |  |
| Debtor. | ) | Judge Pat E. Morgenstern-Clarren |
|  | ) |  |
|  | ) | **MEMORANDUM OF OPINION** |

The debtor David Caravona moves to reopen his chapter 7 case to ask that creditor Sunset Station Casinos, Inc. dba Sunset Station Hotel & Casino (Station Casinos) and the Clark County, Nevada district attorney (district attorney) be held in contempt for violating the bankruptcy code's automatic stay and discharge injunction by taking steps to collect a bad check debt from him through criminal prosecution.[1]  Station Casinos and the district attorney oppose the motion.[2] For the reasons stated below, the motion is granted in part and the case is reopened solely to permit the debtor to pursue the discharge injunction issues.

### JURISDICTION

Jurisdiction exists under 28 U.S.C. § 1334 and General Order No. 84 entered  by the United States District Court for the Northern District of Ohio.  This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O).

---

[1]  Docket 11, 21, 23.

[2]  Docket 15, 18, 24, 27.

## STANDARD FOR REOPENING A CASE

The bankruptcy code provides that a court may reopen a case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The decision on a motion to reopen is committed to the sound discretion of the trial court. *See Rosinski v. Boyd (In re Rosinski)*, 759 F.2d 539, 540-41 (6th Cir. 1985). In exercising such discretion, the court "is to consider the equities of each case with an eye toward the principles which underlie the Bankruptcy Code." *In re Kapsin*, 265 B.R. 778, 780 (Bankr. N.D. Ohio 2001). A case will not, however, be reopened "if doing so would be futile." *In re Jenkins*, 330 B.R. 625, 628 (Bankr. E.D. Tenn. 2005). *See also Zirnhelt v. Madaj (In re Madaj)*, 149 F.3d 467, 472 (6th Cir. 1998) (case will not be reopened where the reopening will have no effect). One example of futility is where the court cannot provide the debtor with any relief. *See In re Hardy*, 209 B.R. 371, 373 (Bankr. E.D. Va. 1997) (in deciding a motion to reopen, the court "must determine if the underlying cause of action . . . is likely to be sustained when considered on the merits."). *See also In re McMullen*, 189 B.R. 402 (Bankr. E.D. Mich. 1995) (case reopened at debtor's request to consider whether county prosecution of fraud charge violated discharge injunction). The moving party has the burden of proof. *In re Jones*, 174 B.R. 67, 69 (Bankr. N.D. Ohio 1994).

## FACTS

The parties stipulated to these facts for purposes of the motion:[3]

In November 2003, the debtor David Caravona wrote six checks to Station Casinos in Las Vegas, Nevada for $15,000.00 which were dishonored by the debtor's bank. He made two payments on this debt in May and June 2004. When he failed to make further payments, Station

---

[3] Docket 26.

Casinos filed complaints with the district attorney's office for Clark County, Nevada based on five checks totaling $13,000.00.

The district attorney's office sent the debtor a letter advising that he could enter the county's bad check diversion program in lieu of immediate prosecution. A few weeks later, the district attorney sent another letter stating that criminal charges were being processed against him and that he should make restitution to Station Casinos if he wished to participate in the state's deferred prosecution program.

The debtor filed his chapter 7 case on October 21, 2004, listing Station Casinos as a creditor and giving notice to the district attorney. The district attorney responded to the debtor's counsel by letter, stating that the state had the right to prosecute the alleged criminal violation. On November 23, 2004, the district attorney filed a criminal complaint alleging that the debtor committed five counts of drawing and passing a check to Station Casinos without sufficient funds with the intent to defraud. The district attorney followed up with a letter to the debtor's counsel dated December 3, 2004, advising that the complaint had been filed and a warrant issued for the debtor's arrest and again providing as an alternative that the debtor could contact the district attorney's bad check diversion unit and make restitution.

The debtor did not take any action in his bankruptcy case alleging violation of the automatic stay by either Station Casinos or the district attorney. The debtor received his discharge on January 20, 2005 and the case was closed the same day. Station Casinos did not object to the discharge or to the dischargeability of the debt.

On September 19, 2005, the debtor was arrested by the Parma Heights police based on the Clark County warrant. The Parma Heights police contacted the district attorney, who confirmed the existence of the warrant and his intention that the debtor be extradited to Nevada for

3

arraignment and trial on the outstanding charges. The debtor then posted a $14,975.00 cash bond with the Parma Heights police. At that point, the district attorney "accepted the cash bail transfer as full restitution, the [d]ebtor was released, the arrest warrant quashed, and the criminal charges filed against the [d]ebtor in Clark County, Nevada were dismissed on October 31, 2005."[4]

Additionally, the court finds that the complaints signed by Station Casinos contained this language: "I(WE) hereby authorize the Clark County District Attorney or his designee as my agent to endorse and cash any negotiable instrument tendered by or on behalf of the drawer of the check presented for collection by this request . . . ."[5] By check dated November 10, 2005, the district attorney paid $13,125.00 to Station Casinos.[6]

## THE POSITIONS OF THE PARTIES

The debtor asks to reopen his bankruptcy case so that he can pursue claims that Station Casinos and the district attorney should be held in civil contempt for violating the automatic stay and the discharge injunction. He basically argues that everything done by Station Casinos and the district attorney was an impermissible act to collect a prepetition debt, for which he is entitled to damages and an injunction prohibiting the district attorney from proceeding with any criminal prosecution against him.

With respect to Station Casinos, the debtor contends that Station Casinos violated the automatic stay by failing to tell the district attorney to stop the criminal prosecution after the bankruptcy filing and violated the discharge injunction by accepting the debtor's money from the prosecutor to pay a prepetition debt. Station Casinos responds that it did not violate the

---

[4] Stipulation 20.

[5] Exhibit A to stipulations.

[6] Station Casinos's objection, docket 15 at 2, f. 2.

4

automatic stay because it did not take any act to collect the debt following the filing of the bankruptcy case.  Also, it argues that bankruptcy code § 523(a)(7) permitted the district attorney to collect the money postdischarge because it was a payment imposed as part of a criminal sentence, which debt is not discharged.  As a corollary, Station Casinos argues, if the district attorney was permitted to collect the money, then Station Casinos was permitted to receive it.  Additionally, Station Casino contends that the debtor's motion is barred by the doctrine of laches.

The debtor's grievance against the district attorney is that he acted as a debt collector for Station Casinos, rather than in furtherance of legitimate police powers.  Also, the debtor takes the position that the district attorney violated his constitutional rights because he:  (1) did not advise the debtor to contact his attorney after he was arrested; and (2) bypassed Nevada's judicial system by accepting the bail money as restitution without consulting the state court judge.  Finally, the debtor argues that the state criminal laws invoked here serve the interests of Nevada creditors rather than the genuine penal interests of the public and, as a result, they are preempted by federal bankruptcy law.

The district attorney posits that the automatic stay does not apply to criminal proceedings and joins in Station Casinos's § 523(a)(7) argument.  Both the district attorney and Station Casinos urge that the case not be reopened because there is no relief available to the debtor on reopening.

5

**DISCUSSION**[7]

The bankruptcy code gives two particularly important protections to an individual chapter 7 debtor: the automatic stay, which goes into effect when the petition is filed and remains until the debtor receives his discharge, and the discharge injunction, which takes effect when the debtor receives his discharge and continues beyond the life of the bankruptcy case itself. This case raises questions under both of these provisions. The briefs are not entirely focused, perhaps due to the fact that this is a preliminary stage of inquiry. Nevertheless, the court will analyze the issues by each actor and each act alleged to be a violation of the automatic stay or the discharge injunction to see if the debtor has met his burden of showing that the case should be reopened because relief is likely to be available to him.

### A. The Automatic Stay 11 U.S.C. § 362

The filing of a bankruptcy case operates as a stay against the commencement of a judicial proceeding against the debtor that could have been commenced before the bankruptcy case was filed. 11 U.S.C. § 362(a)(1). A bankruptcy filing also stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case[.]" 11 U.S.C. § 362(a)(6). There are exceptions to these rules. One such exception is that the filing of a bankruptcy petition does not operate as a stay against "the commencement . . . of a criminal action . . . against the debtor." 11 U.S.C. § 362(b)(1).

### Station Casinos's Acts

According to the stipulated facts, the only action taken by Station Casinos was to file a bad check complaint with the district attorney's office before the debtor filed his chapter 7 case.

---

[7] The debtor filed his case before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005). The applicable law is the law in effect when the case was filed.

6

This did not violate the automatic stay because there was no stay in effect at that time. *See Williamson-Blackmon v. Kimbrell's of Sanford, North Carolina, Inc. (In re Williamson-Blackmon),* 145 B.R. 18, 22 (Bankr. N.D. Ohio 1992) (legitimate actions to collect a debt taken before the filing of a bankruptcy petition are not prohibited by the bankruptcy code).

There is no allegation that Station Casinos took any other direct action. Nevertheless, the debtor argues that Station Casinos violated the stay because it failed to direct the district attorney not to act on its criminal complaint after the debtor filed his bankruptcy case. The debtor has not, however, cited any facts that would show that Station Casinos had the power to stop the criminal prosecution[8] or any law to show that a creditor has an affirmative obligation to try to do so. The debtor has not, therefore, alleged any facts that, on reopening of the case, would likely support a finding that Station Casinos violated the automatic stay.

### The District Attorney's Acts

After the debtor filed his bankruptcy petition, the district attorney filed criminal charges against him. On its face, the bankruptcy code specifically permits such an action. *See* 11 U.S.C. § 362(b)(1). The debtor argues that the court should put a gloss on the statute to say that it does not apply if a prosecutor acts as a debt collector rather than as a public servant vindicating the public good. When a prosecutor acts as a debt collector, the argument goes, it thwarts the bankruptcy code's goals of treating similarly situated creditors in the same manner[9] and giving the honest but unfortunate debtor relief from his financial troubles.

---

[8] In contrast, see for example, *Padgett v. Latham (In re Padgett)*, 37 B.R. 280 (Bankr. W.D. Ky. 1983) where the same lawyer served as both creditor's counsel and the county attorney handling the creditor's criminal complaint against the debtor.

[9] The reality is that if a prosecutor brings criminal charges against a bankruptcy debtor and collects funds that go to the creditor, that creditor will be paid when other similarly situated creditors are left empty-handed.

7

There is an obvious tension here between the federal interest in promoting the bankruptcy code's aims and the states' interest in protecting the well-being of their citizens. And the notion of a federal court enjoining a state criminal proceeding can raise significant federalism concerns.[10] The tension has resulted in a split of authority on how to apply § 362(b)(1), with some courts holding that a prosecutor is free to pursue state criminal bad check charges against a debtor regardless of his motivation in doing so and others finding that the prosecutor is barred from such action if his motive is to collect the debt. *See In re Bibbs*, 282 B.R. 876 (Bankr. E.D. Ark. 2002) (collecting cases on both sides of the issue). Several bankruptcy courts sitting in the Sixth Circuit have concluded that § 362 does not protect a prosecutor or creditor whose primary motivation in bringing criminal proceedings is to collect a civil debt. *See, for example, In re Muncie*, 240 B.R. 725 (Bankr. S.D. Ohio 1999).

Although there is no controlling law from the Sixth Circuit on this particular issue, the Circuit has frequently stated that "'[t]he plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstratively at odds with the intentions of its drafters'." *White v. Kentuckiana Livestock Mkt., Inc.*, 397 F.3d 420, 424 (6th Cir. 2005) (quoting *United States v. Ron Pair Enterp., Inc.*, 489 U.S. 235, 242 (1989)). The language here is straightforward and should, therefore, be applied as written unless it produces a result at odds with Congress's intent. The legislative history for § 362(b)(1) states:

---

[10] There does not seem to be an issue here under *Younger v. Harris*, 401 U.S. 37 (1971) because the debtor filed his bankruptcy case before the district attorney filed the criminal charges. *See Winkler v. Rickert (In re Winkler)*, 151 B.R. 807, 811 (Bankr. N.D. Ohio 1992); *Howard v. Allard*, 122 B.R. 696, 700 (W.D. Ky. 1991). The court is not, however, deciding that issue in this memorandum of opinion.

> the first exception [to the automatic stay] is of criminal proceedings against the debtor. The bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial over-extension. Thus criminal actions and proceedings may proceed in spite of bankruptcy.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 342 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 51 (1978). In light of the plain language and the legislative history, this court believes that the better view is that a prosecutor bringing a bad check prosecution against a debtor is exempt from the automatic stay regardless of the prosecutor's motive in bringing the charges.

It is important to note that this conclusion does not leave a debtor at the mercy of a prosecutor who has improper motives. A debtor may still come to the bankruptcy court and ask that a stay be imposed (i.e., that an injunction be entered) based on the facts of the case. In the words of one leading commentator, at that point the "bankruptcy court should exercise its equitable power to enjoin such a prosecution when the primary purpose is debt collection, or in any case in which it seems clear that enforcement of the criminal law is not the primary motivation of the prosecution." COLLIERS ON BANKRUPTCY 362.05[1][b] (15th rev. ed. 2006).

Bankruptcy courts sitting in the Sixth Circuit have reached a similar result, although some find that this power flows from § 362 while others rely on § 105. *See Batt v. American Rent-All (In re Batt)*, 322 B.R. 776 (Bankr. N.D. Ohio 2005) (in analyzing request for injunction, court must look to the creditor's primary motive in referring matter to prosecutors); *Dovell v. Guernsey Bank (In re Dovell),* 311 B.R. 492 (Bankr. S.D. Ohio 2004) (court preliminarily enjoined state from prosecuting debtor for bad check where initiated to collect debt); *In re Muncie*, 240 B.R. 725 (creditor found in contempt under § 362 where the criminal prosecution was a guise for debt collection, as seen in part by fact that the creditor's attorney was also the prosecuting attorney); *Howard v. Allard* , 122 B.R. 696 (W.D. Ky. 1991) (court preliminarily enjoined state prosecution

for bad check where creditor admitted he filed charges to collect debt); *Holder v. Dotson (In re Holder)*, 26 B.R. 789 (Bankr. M.D. Tenn. 1982) (injunction should issue only where the evidence shows that the criminal proceeding is intended primarily to collect a civil debt); *Ohio Waste Servs., Inc. v. Fra-Mar Tire Servs., Inc. (In re Ohio Waste Servs., Inc.)*, 23 B.R. 59 (Bankr. S.D. Ohio 1982) (court enjoined prosecution where point was to collect debt); *In re Lake*, 11 B.R. 202 (Bankr. S.D. Ohio 1981) (court enjoined prosecution where sole motive was to collect debt).

In this case, § 362(b)(1) authorized the prosecutor to act on the criminal complaint unless and until the debtor obtained an injunction against his doing so. Because the debtor did not request an injunction, the prosecutor did not violate the bankruptcy code by moving ahead with the bad check prosecution. Reopening the case to raise allegations that the district attorney violated the automatic stay will be futile because no relief is available to the debtor under bankruptcy code § 362.

## B. The Discharge Injunction 11 U.S.C. § 524

After the individual chapter 7 debtor meets his obligations under the code, he is discharged from all debts that arose before he filed his bankruptcy case, with exceptions not relevant here. *See* 11 U.S.C. § 727(b). The bankruptcy discharge operates as an injunction to prevent any entity from starting or continuing an act to collect a discharged debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(2). Congress explained its reasoning behind putting the injunction in place in this way: "The injunction is to give complete effect to the discharge and . . . to ensure that once a debt is discharged, the debtor will not be pressured in any way to repay it." H.R. Rep. No. 595, 95th Cong., 1st Sess. 363-64 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 80 (1978).

Although there is no private right of action for a violation of the discharge injunction, a debtor may bring civil contempt charges against an offending entity. *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422-23 (6th Cir. 2000). If contempt is established, the injured party may be able to recover damages as a sanction for the contempt. *See Chambers v. Greenpoint Credit (In re Chambers)*, 324 B.R. 326, 329 (Bankr. N.D. Ohio 2005).

The debtor argues that on reopening he will be able to show that the district attorney violated the discharge injunction because his actions amounted to continued efforts to collect the discharged Station Casinos's debt from the debtor. The debtor argues that the district attorney's real motivation behind having him arrested on a criminal warrant was to collect the discharged debt, as seen by the events following his arrest. The debtor argues further that he will be able to show that Station Casinos, in turn, violated the injunction by accepting the money to pay a discharged debt.

The law in the Sixth Circuit supports the debtor's position that he has stated a cause of action with sufficient supporting facts to warrant reopening his case. The Sixth Circuit Court of Appeals has stated that "the Bankruptcy Code precludes the use of criminal actions to collect debts which have been discharged in bankruptcy." *Daulton v. Caldwell (In re Daulton)*, 966 F.2d 1025, 1028 (6th Cir. 1992). Station Casinos and the district attorney do not contest that general statement of law. Instead, they contend that their post-discharge actions did not violate the discharge injunction for two reasons.

The first proffered reason is that the debtor voluntarily paid the debt, which takes it out of the realm of improper action. The debtor denies that he paid any money voluntarily. The bankruptcy code specifically permits a debtor to pay a discharged debt if he does so voluntarily. 11 U.S.C. § 524(f). A payment is voluntary if it is not "the result of pressure or other inducement

11

by sophisticated creditors . . . [R]epayment due to harassment or duress by a creditor is clearly prohibited." *Hudson v. Central Bank (In re Hudson)*, 168 B.R. 368, 371 (Bankr. S.D. Ill. 1994). The debtor has alleged that he paid the money under duress and without consulting his attorney to avoid immediate extradition from Ohio to Nevada. This raises a genuine issue of fact as to whether the payment was voluntary, which is a question that should be resolved by reopening the case, permitting the parties to conduct discovery, and proceeding to evidentiary hearing if necessary.

The second, apparently alternative argument made by the district attorney is that– regardless of whether the payment was voluntary–he had authority to collect this money under bankruptcy code § 523(a)(7). That section exempts from discharge any debt "for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and [that] is not compensation for actual pecuniary loss[.]" The United States Supreme Court has held that this "preserves from discharge any condition a state criminal court imposes as part of a criminal sentence," including restitution. *Kelly v. Robinson*, 479 U.S. 36, 50 (1986). If the state criminal case had proceeded to judgment and if that judgment had included a restitution order, then the district attorney would be correct. The problem with the district attorney's argument is that he assumes without proving that the money paid by the debtor comes within the definition of a condition imposed as part of a criminal sentence. The stipulated facts are to the contrary; they are that the debtor paid the money at issue here after some kind of informal communication with the district attorney, the details of which are not in the record. This takes the case outside of *Kelly v. Robinson's* direct holding. When the facts are filled in, they may or may not support the district attorney's position by extension of *Kelly*'s reasoning, but it is premature to reach that conclusion at this time. *See, for example, Reynolds v. Nissan (In re Car Renovators)*, 946 F.2d 780, 782 (11th Cir. 1991)

12

(discussing the extension of *Kelly's* reasoning to a situation where restitution is not part of a criminal sentence).

The district attorney urges this court to follow *In re Byrd*, 256 B.R. 246 (Bankr. E.D. N.C. 2000), a case that also involved a debtor who wrote a check to a Clark County, Nevada casino that was dishonored for insufficient funds. There, the debtor was stopped in North Carolina for a traffic violation and arrested on an outstanding Nevada warrant that had been issued based on the bad check. A North Carolina state magistrate held a hearing and entered an order stating that the debtor could post cash bail of $32,000.00 (roughly the amount of the bad check) or he would be released to the Nevada officials. The debtor's wife wired the money to Clark County which then declined to extradite and asked the Nevada court to quash the warrant and dismiss the criminal case. After extensive analysis of the facts, the court found that the casino and district attorney had not violated either the automatic stay or the discharge injunction. While that case provides a helpful discussion of some of the issues, it is not controlling or dispositive here.

In contrast to *Byrd*, the case before this court does not have developed facts because this is a preliminary motion to reopen. The facts presented to date show that after some kind of communication between the debtor and the district attorney, the debtor paid an amount close to the amount of the discharged debt. The district attorney in turn paid most of the money to Station Casinos and did not proceed with the criminal case. There is no indication that any state judge held a bail hearing or entered an order addressing the legal situation that would bring the situation within the *Byrd* facts. The only documentation provided is a receipt for $14,975.00 apparently signed by someone in the Parma Heights police department.[11] The district attorney

---

[11] Stipulation exhibit E.

may be able to prove after the case is reopened that the payment is protected by § 523(a)(7), *see*

*Tennessee v. Hollis (In re Hollis)*, 810 F.2d 106 (6th Cir. 1987), but that is an open issue at this

time and reopening to pursue it would not be futile. Since the district attorney's actions are not at

this point conclusively sanctioned by § 523(a)(7), neither are Station Casinos's acts in

communicating with the district attorney and determining to accept the funds. Reopening the

case to permit the debtor to address these issues will not, therefore, be futile, although it may

ultimately be unsuccessful.

### Additional Arguments Raised by the Parties

A.      The debtor also argues that the case should be reopened because the district

attorney violated his constitutional rights by failing to advise him to call his attorney upon arrest.

It is not clear if this argument is made in connection with a *Younger v. Harris*[12] analysis or if the

debtor is stating this as a separate cause of action. If the latter, there are multiple reasons why

this is irrelevant to the issue at hand: (1) there is no evidence that the district attorney in Nevada

had an obligation to provide a *Miranda* warning to a person arrested by the Parma Heights

police, (2) there is no reasoned argument that there is a private right of action in bankruptcy

courts for alleged violations of the *Miranda* warning,[13] and (3) there is no reasoned argument that

even if a failure to warn existed factually and had legal consequences, that the failure would

violate the discharge injunction. Similarly, the debtor's argument that the district attorney

violated the debtor's constitutional rights by accepting the restitution money without consulting a

---

[12]  *Younger v. Harris*, 401 U.S. 37 (1971). As stated above, this case does not appear to raise *Younger* issues because the bankruptcy case was pending before the district attorney filed the criminal charges. If the district attorney was enjoined from proceeding after the debtor received his discharge, it is because the bankruptcy code imposes an injunction through § 524, not because the court is doing so independently.

[13]  *See Chavez v. Martinez*, 538 U.S. 760, 772 (2003).

state court judge is unsupported by legal argument establishing that there is such a legal duty and that the bankruptcy court is the forum for vindicating such an alleged right.

B.       Station Casinos argues that the debtor's motion is barred by the doctrine of laches because the debtor "slept on his rights while the case was open." Station Casinos relies on *In re Dryja*, 320 B.R. 650 (Bankr. N. D. Ohio 2005). In *Dryja*, the court noted that there are two elements to laches: "lack of diligence by the party against whom the defense is asserted; and (2) prejudice to the party asserting the defense." *Id.* at 653 (citing *Costello v. United States*, 365 U.S. 265, 282 (1961)). The debtor in *Dryja* moved to reopen her case four years after discharge to address liens that had existed during her four other bankruptcy cases. Not surprisingly, the court found that the motion did not state good cause. The circumstances here are otherwise. Although the debtor might have moved a bit faster to raise the postdischarge issue, there is no evidence that Station Casinos suffered legal prejudice as a result of the timing. Station Casinos has not, therefore, shown that laches is a defense to the motion to reopen.

C.       The debtor argues that the federal bankruptcy laws preempt Nevada's state criminal laws. This proposition is not fully briefed by either party and the court declines to address a constitutional issue of this magnitude absent such analysis.

D.       The district attorney contends that relief is no longer available to the debtor because the criminal charges have been dismissed. The relief requested by the debtor has two parts: a request that the district attorney be enjoined from further prosecution and a request that Station Casinos and/or the district attorney be held in civil contempt for violating the discharge injunction. The fact that the criminal charges have been dismissed may well make the injunction issue moot, but it does not negate the possibility that the district attorney and/or Station Casinos

15

might be found to be in civil contempt. The debtor may still, therefore, be entitled to relief despite the dismissal.

## CONCLUSION

For the reasons stated, the debtor's motion to reopen is granted in part solely to pursue claims that Station Casinos and/or the district attorney violated the discharge injunction. A separate order will be entered reflecting this decision.

_____
Pat E. Morgenstern-Clarren
United States Bankruptcy Judge

16